**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Donald A. Hastings,<br><br>       Plaintiff,<br><br>vs.<br><br>BAC Home Loans Servicing; Bank of America, N.A.; Countrywide Home Loans, Inc.; Countrywide Financial Corporation; and Mortgage Electronic Registration Systems, Inc.; and John and Jane Does, I-V; ABC Partnerships I-V; 123 Corporations; Green and Black, LLCs,<br><br>       Defendants. | CV 12-0051-TUC-JGZ<br><br>**ORDER** |

Pending before the Court is a Motion to Dismiss Plaintiff's First Amended Complaint (Doc. 9) brought by Defendants Bank of America, N.A. ("BANA"), successor by merger to BAC Home Loans Servicing, LP ("BACHLS"), Countrywide Home Loans, Inc. ("CHL"), Countrywide Financial Corporation ("CFC"), and Mortgage Electronic Registration Systems, Inc. ("MERS") (collectively "Defendants"). On September 18, 2012, Plaintiff filed a response opposing the Motion. (Doc. 14.) Defendants filed a reply. (Doc. 15.) For the following reasons, Defendants' Motion to Dismiss (Doc. 9) is GRANTED.

**Factual and Procedural Background**

This action arises out of Plaintiff's attempts to obtain a loan modification from BANA. Plaintiff initiated this action against Defendants in Pima County Superior Court on December 11, 2011; the case was removed to federal court on January 18, 2012. (Doc. 1.) On June 15, 2012, the Court dismissed Plaintiff's complaint with leave to amend. (Doc. 7.)

On July 7, 2012, Plaintiff filed his First Amended Complaint. (Doc. 8.) The First Amended Complaint alleges claims only against Defendant BANA and Plaintiff agrees to dismissal of the remaining Defendants. (Doc. 14, p. 3.) The First Amended Complaint and other relevant documents allege and include the following facts relevant to Plaintiff's claims against BANA.

On or about May 14, 2007, Plaintiff borrowed $157,410.00 from CHL. (Doc. 9-1, Ex. A.)[1] The promissory note was secured by the real property located at 4341 E. Pinal Street, Tucson, Arizona 85739 (the "Property"). (*Id.*; Doc. 8, ¶7.) The Deed of Trust named Plaintiff as the borrower, CHL as the lender, Fidelity National Title Insurance Company ("Fidelity") as the trustee, and MERS, acting as the sole nominee for CHL and CHL's successors and assigns, as the beneficiary. (Doc. 9-1, Ex. A.) In July of 2008, BANA acquired CHL. On April 18, 2011, BANA recorded the Deed of Trust assigned to it by MERS. (Doc. 1-4, Ex. 2.)

Plaintiff contends that in August 2009, Fannie Mae notified Plaintiff about the Making Home Affordable Program ("MHAP"). (*Id.* ¶ 11.) Plaintiff completed home affordable program paperwork, which he submitted to Old Pueblo Community Services, a non-profit organization, to forward to BANA. (*Id.* ¶ 12.) On October 22, 2009, Plaintiff was informed that although BANA needed him to update the reason for hardship and his financials, it had determined that he qualified for the MHAP program and he had been approved for a four month trial payment for which he would be receiving paperwork. (*Id.* ¶ 14.) He was also told that his account was $3,288 overdue and advised to continue making mortgage payments. (*Id.*)

After many delays by BANA, the trial paperwork was finally sent to Plaintiff in January 2010 and he began participating in the four month trial payment program on

---

[1] Under Fed. R. Evid. 201, the Court may take judicial notice of a public record without converting the motion to one for summary judgment. *U.S. v. Ritchie*, 342 F.3d 903, 909 (9th Cir. 2003); *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001). The court "must take judicial notice if a party requests it and the court is supplied with the necessary information." Fed. R. Evid. 201(c)(2). The court, however, may not take judicial notice of a fact "subject to a reasonable dispute." Fed. R. Evid. 201(b). The Court will grant BANA's request that the Court take judicial notice of the Deed of Trust because there is no dispute as to its authenticity.

1  February 1, 2010.  (*Id*. ¶¶ 15-24.) During the trial payment period, Plaintiff continued to
2  submit documents and paperwork in support of his request for a MHAP loan. (*Id*. ¶¶ 25-28.)
3  At the end of four months, Plaintiff had not received a determination from BANA. (*Id*. ¶ 28.)
4        Plaintiff and his representatives contacted BANA numerous times during the summer
5  of 2010 to determine if BANA had approved Plaintiff's loan modification request.  (*Id*. ¶¶
6  28-32.) On September 4, 2010, Plaintiff received a letter from BANA, stating that his loan
7  was not eligible for the MHAP based on the results of a net present value ("NPV")
8  calculation.  (*Id*. ¶ 33.)  Plaintiff's representatives requested the NPV report on September
9  9, September 23 and October 5,  2010.   (*Id*. ¶¶ 34-36.)  The representative was told that
10 Plaintiff could dispute the NPV calculation even if the 30-day time period to appeal BANA's
11 denial of his home loan modification passed because it took so long for Plaintiff to receive
12 the findings or to see what other options were available.  (*Id*. ¶ 35.)
13       On October 12, 2010, Plaintiff submitted an appeal of his request for loan
14 modification under MHAP.  (*Id*. ¶ 38.)  On October 14, 2010, BANA sent him a letter
15 stating, "there [are] no available workout options based on the financial information that was
16 provided." (*Id*. ¶ 39.) That letter does not appear to have been a response to Plaintiff's appeal
17 as the following  day, a BANA representative informed  Plaintiff's representative that the
18 appeal was "received, opened and deemed valid."  (*Id*. ¶ 40.) On October 25, 2010, and
19 again on November 15, 2010, Plaintiff learned that, although he had never received the NPV
20 report, BANA denied his appeal as untimely because it was not filed within 30 days of
21 BANA's denial of the request for modification.  (*Id*. ¶¶ 41-42.)
22       Plaintiff finally received the NPV information by letter dated November 26, 2010.
23 (*Id*. ¶ 44; Doc. 9-1, Exh. B.[2])  The letter stated that if within 30 days of receipt Plaintiff found
24 evidence that any of the input values used to calculate the NPV were inaccurate and material,

---

[2] In a motion to dismiss, the court may consider documents incorporated by reference in the complaint without converting the motion to dismiss into a motion for summary judgment. *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). A document is incorporated into a complaint by reference if "the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim." *Id*. BANA's letter denying Plaintiff's loan modification based on the results of his NPV valuation was repeatedly referred to in Plaintiff's Amended Complaint. Therefore, the Court finds that the letter has been incorporated by reference in the Complaint.

1  BANA would conduct a new NPV evaluation. (Doc 9-1, Exh. B.) By letter faxed to BANA
2  on December 1, 2010, Plaintiff disputed information used in the NPV analysis. (Doc. 8, ¶
3  46.)
4        On December 10, 2010, Plaintiff received a letter from BANA, advising that his loan
5  was not eligible for modification and that he should consider a short sale or a deed in lieu of
6  foreclosure. (*Id*. ¶ 49.) However, on December 16, 2010, Plaintiff was informed that his file
7  was still under review for a traditional loan modification. (*Id*. ¶ 50.) On December 29, 2010,
8  BANA sent Plaintiff a letter informing him that his loan was not eligible for MHAP, but
9  may be eligible for a loan modification offered by Fannie Mae. (*Id*. ¶ 52.) On December 29,
10 2010, BANA also sent Plaintiff a notice of intent to accelerate the outstanding payments due
11 on his home mortgage which, as of December 29, 2010, totaled $9,099.19. (*Id*. ¶ 53.)
12       On January 3, 2011, Plaintiff sent documents to BANA for new loan modification
13 consideration; he was told the eligibility review would take thirty days. (*Id*. ¶¶ 54-55.)
14 Plaintiff contacted BANA several times in the following months. On February 11, 2011,
15 Plaintiff was advised that his application was still under review. (*Id*. ¶ 58.) On February 25,
16 2011, he learned that his account was reviewed for a foreclosure on February 24, but
17 deferred. (*Id*. ¶ 59.)  BANA sent Plaintiff a letter on April 18, 2011, regarding the last
18 installment due under a Special Forbearance agreement, for which Plaintiff had never
19 applied. (*Id*. ¶ 62.) On May 26, 2011, Plaintiff was informed that he was "approved to enter
20 into a trial period plan under the Fannie Mae Modification Program" and payments would
21 be $980.51 per month for three months starting July 1, 2011. (*Id*. ¶ 63.)  A letter from
22 BANA dated June 2, 2011, advised that the trial payment plan did not guarantee a permanent
23 modification would be received. (*Id*. ¶ 64.) Finally, on October 3, 2011, BANA denied
24 Plaintiff's request for loan modification "because [he] did not make all of the required Trial
25 Period Plan payments by the end of the trial period." (*Id*. ¶ 67.) Plaintiff alleges that he now
26 faces the possibility of foreclosure due to delays, false statements and miscommunications
27 by Defendants.
28 //

**Discussion**

Plaintiff asserts two claims against BANA: fraud and breach of the duty of good faith and fair dealing. BANA moves to dismiss the Complaint pursuant to Rule 12(b)(6), Fed. R. Civ. P., for failure to state a claim upon which relief can be granted. BANA contends that Plaintiff's Complaint fails to state a claim for fraud and cannot state a claim for breach of the duty of good faith and fair dealing.

To survive a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted, "factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true even if doubtful in fact." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations and internal quotations omitted). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (citations and internal quotations omitted). Dismissal is appropriate under Rule 12(b)(6) if the facts alleged do not state a claim that is "plausible on its face," *id.* at 570, or if a plaintiff fails to allege sufficient facts under a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). When assessing the sufficiency of the complaint, all factual allegations are taken as true and construed in the light most favorable to the nonmoving party. *Iolab Corp. v. Seaboard Sur. Co.*, 15 F.3d 1500, 1504 (9th Cir. 1994). All reasonable inferences are to be drawn in favor of that party. *Jacobsen v. Hughes Aircraft*, 105 F.3d 1288, 1296 (9th Cir. 1997). The court, however, need not accept as true allegations contradicted by documents referred to in the complaint, *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994), or allegations that are internally inconsistent. *Pesci v. IRS*, 67 F. Supp. 2d 1189, 1192 (D. Nev. 1999). Further, the court recognizes that allegations of a *pro se* complaint are held to a less stringent standard than formal pleadings drafted by lawyers. *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010).

//

**A.    Fraud**

Under Arizona law, to state an actionable fraud claim, the plaintiff must establish that:

> the defendant made a false, material misrepresentation that he knew was false or was ignorant of its truth, with the intention that the hearer of the representation act on it in a manner reasonably contemplated, that the hearer was ignorant of the representation's falsity, rightfully relied on the truth of the representation, and sustained consequent and proximate damage.

*Haish v. Allstate Ins. Co.*, 5 P.3d 940, 944 (Ariz. App. 2000). In alleging a fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Fed. R. Civ. P. 9(b).[3] This requires that averments of fraud be accompanied by "the who, what, when, where, and how" of the misconduct charged. *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (quoting *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997)). The plaintiff must set forth more than neutral facts that identify a transaction, but rather, he must state what is false or misleading about the statement, and why it is false. *Vess,* 317 F.3d at 1106.

Plaintiff alleges that BANA engaged in fraudulent behavior by: (1) delaying review of his requests for loan modification; (2) falsely indicating it would consider modifying Plaintiff's loan; (3) delaying sending Plaintiff the NPV report, which prevented him from filing a timely appeal; and (4) requesting that Plaintiff make trial loan modification payments knowing that Plaintiff's loan was ineligible for modification. Plaintiff's fraud claim fails for numerous reasons. First, Plaintiff fails to identify any false statements by any specific BANA representative. Second, accepting Plaintiff's allegations as true, Plaintiff fails to allege a false statement. BANA's alleged delay in reviewing Plaintiff's request for loan modification is not a false representation. BANA's delay in sending the NPV report is not a false representation. BANA's request that Plaintiff make payments (trial or otherwise) is not a false representation. BANA's representation that it would consider Plaintiff's request for loan modification appears, from Plaintiff's allegations, to be a true statement, not a

---

[3]"It is well established law, in this circuit and elsewhere, that Rule 9(b)'s particularity requirement applies to state-law causes of action." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103 (9th Cir. 2003).

misrepresentation. To the extent that Plaintiff alleges that BANA falsely represented that it would consider modification, when it had no such intent, such a statement does not constitute a misrepresentation. "Actionable fraud must be based upon a misrepresentation of material fact, and not upon an expression of opinion." *Page Inv. Co. v. Staley*, 468 P.2d 589, 591 (Ariz. 1970). Further, "a representation must relate to a past or existing fact, and cannot be based on unfulfilled promises or statements as to future events unless such were made with the present intention not to perform." *Frazier v. Southwest Sav. & Loan Ass'n*, 653 P.2d 362, 365 (Ariz. App. 1982). A representation to consider in the future a request for modification is not actionable. Third, Plaintiff fails to allege that he reasonably relied on BANA's misrepresentations to his detriment and, the facts that he does allege, fail to demonstrate that a misrepresentation was the cause of his damages. Plaintiff was obligated to make monthly payments under the terms of the Note. He does not allege that BANA instructed him to stop making loan payments or that he relied on such a statement to his detriment. In fact, Plaintiff acknowledges in his First Amended Complaint that BANA advised him he needed to continue making mortgage payments during the loan modification application process. Similarly, Plaintiff does not allege that BANA represented that he would successfully obtain a loan modification or that he relied on such a statement to his detriment. BANA was not obligated to modify Plaintiff's loan and Plaintiff could not reasonably rely on BANA's representations that his modification request was being considered as assurance of future approval of the request.

In sum, although Plaintiff provides a detailed history of his interactions with BANA, he fails to identify a misrepresentation, by a particular person, at a particular time, that the maker of the statement knew to be false and intended that Plaintiff act on it in a manner reasonably contemplated, that Plaintiff was ignorant of the falsity of the representation, reasonably relied on the representation, and in consequence sustained proximate damages. Count I must therefore be dismissed for failure to state a claim.

//
//

### B.   Good Faith and Fair Dealing

In every contract, the law implies a duty of good faith and fair dealing. *Rawlings v. Apodaca*, 726 P.2d 565, 569 (1986). The duty of good faith and fair dealing arises by virtue of a contractual relationship and requires that "neither party will act to impair the right of the other to receive the benefits which flow from their agreement or contractual relationship." *Id*. The court's inquiry should focus on the contract itself, to determine what the parties agreed to do. *Id.* at 570.

Plaintiff alleges that BANA owed him a duty of good faith and fair dealing pursuant to the parties' Deed of Trust, and BANA violated that duty by: (1) misrepresenting its willingness to modify Plaintiff's loan and (2) engaging in unconscionable conduct related to the loan modification request. Plaintiff fails to allege, and there is nothing in the Deed of Trust to suggest, that loan modification was a benefit that flowed from the Deed of Trust and that the parties obligated themselves to engage in loan modification. Thus, although BANA's communications may have been confusing and caused Plaintiff to hope for a favorable modification, BANA could not have breached a duty of good faith and fair dealing because it owed Plaintiff no duty to consider his loan modification requests. *See, e.g., Silving v. Wells Fargo, N.A.*, 800 F. Supp. 2d 1055, 1070-71 (D. Ariz. 2011) (dismissing plaintiff's claim that the defendant violated the duty of good faith and fair dealing during the loan modification process because that duty generally does not extend to negotiations); *Vera v. Wells Fargo Bank, N.A.*, 2011 WL 334286, at *3 (D. Ariz. Jan. 31, 2011) (dismissing plaintiff's claim that the defendant violated the duty of good faith and fair dealing because modified payments was not a benefit that flowed from the loan agreement); *Hunter v. CitiMortgage, Inc. Et al.*, 2011 WL 4625973, at *3 (D. Ariz. Oct. 5, 2011) ("Plaintiffs have not pled the existence of a separate enforceable contract to negotiate for a loan modification in good faith, and thus any claims alleging a violation of good faith and fair dealing arising from the loan modification negotiations fail."). Accordingly, Count Two must be dismissed.

//

//

8

**Leave to Amend**

Rule 15(a), Fed. R. Civ. P., requires that "leave shall be freely given when justice so requires." Five factors are utilized to assess the propriety of a motion for leave to amend: "(1) bad faith; (2) undue delay; (3) prejudice to the opposing party; (4) futility of amendment; and (5) whether plaintiff has previously amended his complaint." *Ascon Properties, Inc. v. Mobil Oil Co.*, 866 F.2d 1149, 1160 (9th Cir. 1989). Where plaintiff has previously amended the complaint, the district court's discretion to deny leave to amend is particularly broad. *Allen v. City of Beverly Hills*, 911 F.2d 367, 373 (9th Cir. 1990). Taking these factors into consideration, the Court will give Plaintiff a final opportunity to amend his complaint. The Second Amended Complaint must comply with Fed. R. Civ. P. 9(b) and shall not be inconsistent with this Order.

**Conclusion**

For all of the foregoing reasons, IT IS ORDERED that:

1. Defendants' Motion to Dismiss Plaintiff's First Amended Complaint (Doc. 9) is GRANTED.

2. Defendants Countrywide Home Loans, Inc., Countrywide Financial Corporation, and Mortgage Electronic Registration Systems, Inc. are dismissed with prejudice. The Clerk of the Court shall terminate these parties from this case.

3. Plaintiff shall have **fourteen (14) days** from the filing of this Order to file a Second Amended Complaint consistent with this Order. Should Plaintiff fail to file an Amended Complaint within the prescribed period, this matter may be dismissed without further action.

Dated this 14th day of February, 2013.

Jennifer G. Zipps
United States District Judge